

**IT IS ORDERED as set forth below:**

**Date: February 15, 2022**

_____

**Barbara Ellis-Monro
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

| | |
|---|---|
| IN RE: | CASE NO. 10-43491-BEM |
| CHARLES PAUL WALKER, | |
| Debtor. | CHAPTER 7 |
| IN RE: | CASE NO. 10-43492-BEM |
| PAUL BRYAN WALKER and ROBIN ROUILLIER WALKER | |
| Debtors. | CHAPTER 7 |

**O R D E R**

**I. Background**

This matter is before the Court on the *Motion to Determine Judgment Not in Violation of Stay as to Non-Estate Property and Non-Debtor Parties or, Alternatively, to Annul the Stay* (the "Relief Motion") [Case 10-43491 Doc. 107; Case 10-43492 Doc. 93] filed by Bryan Peeples and the Co-Executors of the Estate of Shelby C. Peeples, Jr. and *Debtor's Motion to Recover Damages From Shelby Peeples and Bryan Peeples for Their Willful Violation of the*

*Automatic Bankruptcy Stay* (the "Damages Motion") [Case 10-43491 Doc. 117; Case 10-43492 Doc. 102]. These motions involve a dispute between Debtor Charles Paul Walker ("Paul Walker") and Debtor Paul Bryan Walker ("Bryan Walker" and collectively, the "Walkers" or "Debtors") on one side and Bryan Peeples and the Co-Executors of the Estate of Shelby C. Peeples, Jr. (the "Peeples") on the other side. The Peeples sued the Walkers in the Superior Court of Whitfield County in 2003. After a trial, the jury entered a verdict in favor of the Peeples. The Walkers then filed their bankruptcy cases and notified the Superior Court of their bankruptcy cases. Thereafter, the Superior Court entered a judgment on the verdict (the "Judgment") that expressly referenced the bankruptcy filings.

The Peeples' Relief Motion asks for a determination that the Judgment did not violate the automatic stay as to non-estate assets and non-debtor property or, alternatively, for retroactive annulment of the stay with respect to the Judgment. The Walkers' Damages Motion asserts that the Judgment is void because it was entered in violation of the automatic stay,[1] that the Peeples' failure to undo the Judgment violated the stay and proximately caused the Walkers to incur attorney fees, and that the Peeples acted in bad faith by twice suing on an unenforceable Judgment such that the Walkers are entitled to punitive damages. The Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(G).

The Relief Motion and the Damages Motion came before the Court for an evidentiary hearing on January 18, 2022, at which all parties presented witness testimony[2] and documentary evidence. Having considered the evidence, including a stipulation filed by the parties in relation to the Relief Motion (the "Stipulation" or "Stip.") [Case 10-43491 Doc. 116 Ex. A; Case 10-43492 Doc. 87 Ex. A], the applicable law, and the arguments of the parties the Court will

---

[1] The Walkers' responses to the Relief Motion also assert that the Judgment is void.
[2] The deposition testimony of Shelby Peeples, who is deceased, was read into the record.

2

grant the Relief Motion and will deny the Sanctions Motion. This Order constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

**II. Findings of Fact**

The Walkers and the Peeples entered into a Process and Product Development Agreement ("PPDA") dated May 7, 2003 related to the development of polyurethane processes in the application of backing in the manufacture of carpet (the "Technology"). [Stip. ¶ 1]. The PPDA [Peeples Ex. 1[3]; Walker Ex. 1[4]] provided that (1) the Walkers would issue 50% of the ownership interest in Simplicity Coating, LLC ("Simplicity") to Bryan Peeples; (2) the Walkers would issue 20% of the ownership interest in New Spirit Backings, LLC ("New Spirit") to the Peeples; (3) the Walkers would convey all interest in the Technology to Simplicity; (4) the Walkers would cause Simplicity to grant New Spirit an exclusive license in the Technology; (5) the Walkers would cause New Spirit to grant the Peeples an exclusive perpetual sublicense to use the Technology on a commission basis in the industry and a nonexclusive perpetual sublicense to use the Technology in the Peeples' own manufacturing processes. [PPDA ¶ 4.4, 4.5].

On September 15, 2003, the Peeples filed a complaint against the Walkers in the Superior Court of Whitfield County, Georgia, asserting claims for injunction, declaratory judgment, and specific performance (the "2003 Action"). [Stip. ¶ 2; Ex. W2]. The Walkers were the only defendants named in the 2003 Action and the only defendants served in the 2003 Action. [Stip. ¶ 13, 14]. Joann Brown Williams (now Joann Sharp and hereinafter "Ms. Sharp") began representing the Peeples in the 2003 Action in January 2009, replacing their prior attorney. [Ex. W6]. In a letter dated September 4, 2009, the Peeples wrote to the Walkers demanding that

---

[3] The Peeples' exhibits are filed on the docket at Case No. 10-43491, Docs. 150 & 152 and Case No. 10-43492, Docs. 135 & 137, and shall hereinafter be referred to as "Ex. P___."
[4] The Walkers' exhibits are filed on the docket at Case No. 10-43491, Doc. 148 and Case No. 10-43492, Doc. 133, and shall hereinafter be referred to as "Ex. W___."

3

Simplicity and New Spirit take certain actions pursuant to O.C.G.A. § 14-11-801 et seq.[5] [Ex. W9]. In the letter the Peeples stated that they are members or are entitled to be members of Simplicity and New Spirit. [Id.] Bryan Peeples signed the letter as a member of Simplicity and New Spirit and Shelby Peeples signed the letter as a member of New Spirit. [Id.] On October 22, 2009, the Peeples filed an amended complaint in the 2003 Action that asserted claims directly and derivatively on behalf of Simplicity and New Spirit for breach of fiduciary duty, gross negligence, misappropriation of corporate opportunities, conversion, and accounting. [Stip. ¶ 5; Ex. W10]. The Walkers filed a motion to dismiss the amended complaint, arguing among other things that the Peeples could not bring derivative claims. [Ex. P5]. Judge Morris of the Superior Court denied the motion to dismiss, finding among other things that the Peeples had standing to bring the derivative claims. [Ex. P8].

In the jury charge, Judge Morris explained a derivative action and the requirements for awarding damages in a derivative action. [Ex. P9 at 19-23]. Judge Morris then went through the verdict form, noting that questions 8, 9, 10, and 11 are special interrogatories, in which the jury makes findings. [Id. at 25.] In a discussion with counsel about their exceptions to the jury charge, Judge Morris indicated that the special interrogatories related to the declaratory judgment claim. [Id. at 30]. Ms. Sharp testified that the verdict form was a collaborative effort among her, Judge Morris, and counsel for the Walkers and that she does not recall any objections once the form was put together. [Audio Tr. 1/20/22 at 10:25:20 am].

On August 26, 2010, a jury verdict was filed in the 2003 Action in favor of the Peeples and against the Walkers (the "Verdict"). [Stip. ¶ 10]. In the Verdict, the jury answered "yes" to the question of whether the PPDA was breached. [Ex. W18; Ex. P10]. The jury indicated

---

[5] O.C.G.A. § 14-11-801 sets forth the conditions for a member to commence a derivative action on behalf of a limited liability company.

4

that the breach was by Paul and/or Bryan Walker and awarded the Peeples damages of $248,384.87 from Paul Walker and $5,000 from Bryan Walker. [Id.]. The jury indicated that the Peeples were not entitled to punitive damages but were entitled to attorney fees and costs against Paul Walker. [Id.]. The jury indicated that neither Simplicity nor New Spirit were entitled to damages. [Id.]. Finally, in answer to the special interrogatories, the jury checked a box to indicate whether the Peeples were entitled to certain property interests. The jury indicated the Peeples were entitled to 50% of Simplicity; 20% of New Spirit; a paid-up, exclusive perpetual license to use the polyurethane process on a commercial basis; and a paid-up, non-exclusive perpetual license to use the polyurethane processes, products, and technology for its own manufacturing. [Id.].

Paul and Bryan Walker filed separate Chapter 7 cases on September 3, 2010[6] (the "Petition Date"). [Stip. ¶ 15, 17]. On his statement of financial affairs, Paul Walker listed five lawsuits, including the 2003 Action and the case of GMAC v. Walker, also in the Superior Court of Whitfield County. [Ex. P11 at 7]. The "Status or Disposition" of the 2003 Action was listed as "Jury Verdict"; for the GMAC case, it was listed as "Judgment." [Id.]. On Schedule B – Personal Property, line 13 for interests in businesses, Paul Walker listed, "Various – all defunct but not know if dissolved." [Id. at 16]. Paul Walker testified that he did not own any interest in Simplicity or New Spirit or any license rights when the bankruptcy case was filed, and the information on line 13 referred to other companies. [Audio Tr. 1/18/22 at 10:57:19 am; 11:05:54 am]. On Schedule F – Creditors Holding Unsecured Nonpriority Claims, Paul Walker listed Bryan Peeples and Shelby Peeples each as holding a claim in the amount of $248,384, and the debt was not marked as contingent, unliquidated, or disputed. [Id. at 21, 22]. On Schedule G – Executory Contracts and Unexpired Leases, Paul Walker listed the PPDA and the Peeples as the other parties to the contract.

---

[6] Bryan Walker's bankruptcy case was filed jointly with his wife.

5

[Id. at 23]. Bryan Walker made the same disclosures on his statement of financial affairs and schedules, except his debt to the Peeples was scheduled in the amount of $5,000. [Ex. P12 at 9, 18, 26, 28, 29].

On the Petition Date, a Plea of Pending Bankruptcy was filed in the 2003 Action. [Stip. ¶ 20; Ex. W23]. The Plea said the bankruptcy proceedings "stays the actions against the Debtors and the Debtors' property." [Id.] In addition, H. Greely Joiner, Jr., the Walker's attorney in the 2003 Action, sent a letter dated on the Petition Date to Judge Morris notifying her of the bankruptcy filings and stating, "As we understand it, such filing effectively stays the proceeding with respect to attorneys' fees …. If our understanding is incorrect, please let us know and we will make a decision on a hearing or brief with respect to attorneys' fees." [Ex. P14]. Ms. Sharp testified that she received a copy of the plea of bankruptcy and Mr. Joiner's letter at the time he sent them to Judge Morris. [Audio Tr. 1/20/22 at 10:33:18 am; 11:14:06 am].

On September 14, 2010, the Superior Court entered the Judgment in the 2003 Action based on the Verdict but stayed any consideration of attorney fees due to the bankruptcy filings. [Stip. ¶ 23; Ex. W27]. The Judgment stated that on the Petition Date, "counsel for Defendant informed the Court of Defendant's bankruptcy filing, effectively staying any action regarding the award of attorney fees." [Ex. W27]. Ms. Sharp testified that she did not draft or prepare the Judgment. Ms. Sharp testified that Judge Morris had asked if Ms. Sharp wanted to prepare the Judgment, but because it was Ms. Sharp's first solo trial, she did not know how to prepare a judgment. Ms. Sharp testified it was her assumption that either Judge Morris or her staff prepared the Judgment. Ms. Sharp testified that she did not have any communication with Judge Morris's staff between the Verdict and the entry of the Judgment. Ms. Sharp testified that she has very limited experience in bankruptcy court and that at the time the Judgment was entered, she did

6

not know it was a stay violation. Ms. Sharp testified that after seeing Mr. Joiner's letter to Judge Morris about the bankruptcy filing and the automatic stay, she did some research that led her to believe entry of the Judgment was ministerial and that only liquidation of the attorney fees was affected by the stay. Ms. Sharp testified that after the Judgment was entered, she took no action to have it vacated or set aside. [Audio Tr. 1/20/22 at 10:19:48 am; 10:26:39 am; 10:36:45 am; 11:01:58 am; 11:09:50 am; 11:40:55 am].

On October 4, 2010, Ms. Sharp filed a *Motion for Relief From the Automatic Stay and Brief in Support* on behalf of the Peeples in Paul Walker's bankruptcy case for purposes of resolving the attorney fee issue in the 2003 Action. [Stip. ¶ 26; Ex. W29]. Ms. Sharp testified that she did the bulk of the writing of the motion. [Audio Tr. 1/20/22 at 11:20:25 am]. The motion noted the date of the Verdict and that the bankruptcy filings had stayed further proceedings on the attorney fee issue. [Ex. W29 at 5]. The motion further stated that "Judgment has been entered" but did not provide the date of the Judgment, did not state whether it had been entered before the Petition Date, and did not include a copy of the Judgment. [Id. at 7]. Ms. Sharp testified that if she thought the Judgment was affected by the automatic stay, she would have included it in her motion, and that at no time did the Walkers or their attorney notify her that entry of the Judgment might have violated the automatic stay. Ms. Sharp further testified that she does not recall any opposition to her motion. [Audio Tr. 1/20/22 at 10:37:39 am; 10:38:55 am; 10:46:18 am; 10:46:45 am]. The motion was granted on October 29, 2010. [Stip. ¶ 14; Ex. W32; Ex. P20]. A copy of the order granting stay relief was filed in the 2003 Action on November 10, 2010 [Ex. W38], but Ms. Sharp testified that she does not remember whether the Peeples took any further action to liquidate the attorney fees because the focus shifted to the bankruptcy proceedings. [Audio Tr. 1/20/22 at 12:04:48 pm].

7

On November 3, 2010, Paul Walker filed a response to a motion to quash a subpoena that had been served on his accountant by the Peeples, in which he asserted the 2003 Action "concluded with a breach of contract resolution for which punitive damages were rejected." [Ex. P21]. On November 5, 2010, Paul Walker's then-bankruptcy attorney, Thomas E. Ray, filed an Affidavit of Counsel in support of Paul Walker's response to the Peeples' motion for a 2004 examination. [Ex. P23]. The affidavit stated that the 2003 Action "recently ended in a jury verdict for breach of contract but disallowance of punitive damages," and a copy of the Judgment was attached. [Id.]. On November 11, 2010, Paul Walker through counsel filed a response to the Peeples' motion to extend time to file a discharge complaint in which he said, "The Movants' claims of fraud and punitive damage were rejected by the jury. The Movants' claims against the Debtor have been reduced to judgment in State Court. There is no basis for more investigation as to whether there is a dischargeability issue. *Issue preclusion applies in this matter*." [Ex. P26 at 2 (emphasis added)].

On January 14, 2011, the Bankruptcy Court entered a discharge order in Bryan Walker's bankruptcy case. [Stip. ¶ 15].

On February 1, 2011, the Peeples filed an adversary proceeding in Paul Walker's bankruptcy case to object to discharge and determine the dischargeability of a debt. [Stip. ¶ 16; Ex. W43; Ex. P30]. The complaint identified the Peeples as "judgment creditors" of Paul Walker and referenced the Judgment as a basis for their interests in Simplicity and New Spirit. [Ex. P30 ¶¶ 4, 9, 12]. The complaint did not provide the date of the Verdict or the Judgment, but noted that the Peeples had obtained stay relief to liquidate the attorney fees, and a copy of the Judgment was attached to the complaint. [Ex. P30 ¶¶ 17, 18 & ex. 3]. Ms. Sharp testified that she did most of the writing and work on the complaint and on subsequent filings in the adversary proceeding. [Audio

8

Tr. 1/20/22 at 10:44:55 am]. The claims asserted in the complaint included nondischargeability of the Peeples' debt based on false pretenses, false representation, or actual fraud under 11 U.S.C. § 523(a)(2)(A) and based on fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny under § 523(a)(4). [Ex. P30 ¶¶ 109-132]. On February 22, 2011, Paul Walker's attorney filed a motion to withdraw as counsel and to extend the time to answer. [Ex. W44]. The motion was granted on February 23, 2011. [Ex. W45]. Paul Walker filed an answer pro se on March 29, 2011. [Ex. P33]. In the answer, he stated, "I admit to being a judgment creditor [sic] of Shelby and Bryan Peeples."[7] [Ex. P33 ¶ 4].

On October 31, 2011, Paul Walker filed a motion for summary judgment in the adversary proceeding, in which he stated he "was found innocent of the fraud issue in civil court" and referenced the Judgment. [Ex. P35 at 11]. In the motion, Paul Walker also stated, "Due to the ruling in the civil case, Defendant believes he is entitled to rely on Res Judicata." [Ex. P35 at 12]. Paul Walker testified that he does not know what res judicata means and that he probably got that concept from an attorney, as he asked a lot of questions even though he was acting pro se. [Audio Tr. 1/18/22 at 11:15:40 am; 11:39:40 am].

The Peeples also filed a motion for summary judgment and statement of undisputed material facts on October 31, 2011. [Ex. P36; Ex. W52, W53]. The statement of facts says that "the Peeples became Walkers' judgment creditors when [the Superior Court] entered a judgment in their favor on certain of their claims against Walker" and that "Walker filed for bankruptcy protection on September 3, 2010 … specifically to avoid the Peeples' judgment." [Ex. P36 at 2, 26]. The Peeples' motion says that Paul Walker filed for bankruptcy "in order the evade the judgment" and that "Walker's stated purpose for filing his [bankruptcy] petition was to avoid the

---

[7] The Court takes this to be a misstatement and that Paul Walker was admitting the Peeples were his judgment creditors.

9

Peeples' judgment[.]" [Ex. P36 at 2, 5]. Ms. Sharp testified that she took those facts from Paul Walker's testimony at his meeting of creditors, using his statements to explain why he filed for bankruptcy, and that a transcript of the meeting of creditors was attached as an exhibit to the motion for summary judgment.[8] [Audio Tr. 1/20/22 at 11:47:50 am]. The motion also references the Judgment in its discussion of the § 523(a)(2)(A) claim against Paul Walker, and the statement of facts says, "The Peeples sustained a loss as shown by the fact they still have not obtained their membership interests in [Simplicity or New Spirit] and as shown by the Superior Court judgment." [Ex. P36 at 18, 40]. In a discussion of embezzlement under § 523(a)(4), the motion says that Paul Walker's conduct is "sufficient to exempt the Peeples' judgment from discharge." [Ex. P36 at 20]. The Peeples motion and statement of facts do not mention the Verdict or the date of the Judgment, but a copy of the Judgment is attached as exhibit 1 to the Peeples' motion and statement of facts. [Ex. P36 at 47]. Ms. Sharp testified that she did not intend to mislead the bankruptcy court about the date the Judgment was entered either in the motion for stay relief or in the motion for summary judgment. [Audio Tr. 1/20/22 at 10:45:42 am]. In his response to the Peeples' motion for summary judgment, Paul Walker said he believed the Judgment would be overturned on appeal. [Ex. P37 at 15]. With respect to embezzlement, Paul Walker said, "The Defendant was found innocent of such actions in the civil court case." [Ex. P37 at 17]. Paul Walker made other references to the Judgment and the trial in the 2003 Action in complaining about the litigation conduct of the Peeples in the 2003 Action and in the adversary proceeding. [Ex. P37 at 19-21].

    The Court held a hearing on the cross motions for summary judgment on February 14, 2012, at which Ms. Sharp represented the Peeples and Paul Walker appeared pro se. [Ex. W58]. Multiple exchanges during the hearing demonstrated that Ms. Sharp and the Court assumed the

---

[8] Ex. P36 at 50.

10

Judgment was valid, but not necessarily final because of the possibility of appeal. [Ex. W58 at 27-28, 32, 34]. For example, the Court said, "I understand there is a judgment, which is not a final judgment because there's still an appeal process that could go on. But all I know about that is the judgment and the jury verdict." [Ex. W58 at 27]. And, Ms. Sharp said, "That – that's the beauty of it is this has all been litigated. This is all collateral estoppel." [Ex. W58 at 28]. The Court also said, "I understand it's not true res judicata because we don't have a final judgment, but we do have a judgment." [Ex. W58 at 32].

On April 19, 2021, the Court entered an order denying both motions for summary judgment. [Ex. W59 & P39]. In the order the Court said that the facts "begin with an agreement between the Peeples and Walker, proceed through a state-court lawsuit and judgment based on disputes arising from that agreement, and culminate in Walker's bankruptcy filing[.]" [Ex. W59 at 2]. The order further states: "After a jury trial, the superior court entered judgment in September 2010 in favor of the Peeples for breach of contract." [Ex. W59 at 3 (citing to the Judgment)]. Finally, the order states that the Peeples' debt "was reduced to judgment in the Superior Court of Whitfield County." [Ex. W59 at 14]. The Court also noted that issue preclusion may apply to the claims under § 523(a) due to the 2003 Action. [Ex. W59 at 14, 18, 19].

After the cross motions for summary judgment were denied, on May 2012, the Peeples filed a stipulation of dismissal with prejudice and a motion for entry of an order of dismissal. [Stip. ¶¶ 50, 51; Ex. W60, W61]. Because the complaint included claims objecting to discharge under 11 U.S.C. § 727, on June 1, 2012, the Court issued a Rule 7041 notice providing an opportunity for interested parties to be substituted as plaintiffs. [AP 11-4005, Doc. 55]. When no motions for substitution were received by June 22, 2012, the proceeding stood as dismissed. [Id.].

11

On July 12, 2012, the Bankruptcy Court entered a discharge order in Paul Walker's bankruptcy case. [Stip. ¶ 34; Ex. W63].

Bryan Peeples testified that he was an owner and president of AstroTurf, LLC, and that it was sued in 2010 in federal court in Michigan for patent infringement. The case went to jury trial. [Audio Tr. 1/18/22 at 3:22:27 pm; FieldTurf USA, Inc. v. AstroTurf, LLC, Case No. 10-12492 (E.D. Mich.)]. On October 9, 2015, the jury in the Michigan case entered a verdict in favor of FieldTurf and awarded damages. [Ex. W65]. On June 28, 2016, AstroTurf filed a Chapter 11 bankruptcy petition, and filed a suggestion of bankruptcy in the Michigan case. [Ex. W68, W69]. The suggestion of bankruptcy included a proposed order staying all proceedings in the FieldTurf case in accordance with the automatic stay. [Ex. W69]. Bryan Peeples testified that AstroTurf filed for bankruptcy because it could not afford to pay the damages awarded to FieldTurf. [Audio Tr. 1/18/22 at 3:25:20 pm]. In a letter dated August 9, 2016, AstroTurf's bankruptcy counsel inquired of FieldTurf's counsel about a motion that FieldTurf had filed under seal in the Michigan case to reopen the case and file a supplemental complaint, and advised that efforts to continue the litigation were a violation of the automatic stay. [Ex. W72]. On August 10, 2016, AstroTurf filed an emergency motion to enforce the automatic stay and for sanctions in its bankruptcy case. [Ex. W73].

On August 24, 2018, the Peeples filed a complaint in the Superior Court of Whitfield County against the Walkers and against Simplicity, New Spirit, and Empire Coating, LLC (collectively, the "LLC Defendants") seeking to enforce their rights under the Judgment (the "2018 Action"). [Stip. ¶ 38; Ex. W40]. In an email dated October 23, 2018, the Walkers' attorney provided the Peeples' attorney in the 2018 Action and their general counsel with legal citations for the proposition that a judgment entered in violation of the automatic stay is void. [Ex. W75].

12

On December 7, 2018 the Walkers filed an answer in the 2018 Action that asserted the Judgment had been entered in violation of the automatic stay among other defenses; the LLC Defendants filed a separate answer raising the same defense. [Ex. P42, P43]. Also on December 7, 2018, the Walkers and the LLC Defendants filed a motion to dismiss or alternatively a motion for judgment on the pleadings based on the argument that the Judgment was void and, therefore, claims to enforce the Judgment must fail. [Ex. W78]. In response to the motion to dismiss, the Peeples argued that the Bankruptcy Court had tacitly annulled the automatic stay when it granted stay relief for the Peeples to proceed with the issue of attorney fees in the 2003 Action and further demonstrated by the Bankruptcy Court's discussion of preclusion in the summary judgment order in the adversary proceeding. [Ex. W79]. In reply, the Walkers and the LLC Defendants argued that there is no legal authority for tacit annulment of the automatic stay; instead it requires a motion and an opportunity to object. [Ex. W80].

Paul Walker testified that prior to the 2018 Action, he never complained that the Judgment was entered in violation of the automatic stay and had no knowledge whether it was properly entered or not. Additionally, he testified that he did not know the difference between a jury verdict and a judgment and that he has had no formal legal training. He testified that he first learned that the Judgment could have violated the automatic stay when it was brought to his attention by his attorney in the 2018 Action. [Audio Tr. 1/18/22 at 11:20:32 am; 4:19:04 pm; 4:22:40 pm]. Bryan Peeples also testified that he had no knowledge of how the Judgment could violate the Bankruptcy Code and was never told before 2018 that its entry violated the automatic stay. Bryan Peeples testified that he has no legal training and that he employs attorneys when necessary and relies on them for legal analysis and to draft documents, including legal filings. [Audio Tr. 1/18/22 at 11:50:20 am; 3:32:28 pm].

13

On March 7, 2019, the Superior Court held a hearing on the motion to dismiss in the 2018 Action. [Ex. W81, P44]. On March 21, 2019, the Superior Court entered an order deferring ruling on the motion to dismiss to allow the parties to return to the Bankruptcy Court "to seek clarification of the issue of the annulment's applicability to the [Judgment] or in the alternative give [the Peeples] the opportunity to petition the Bankruptcy Court … for an annulment[] of the stay."[9] [Ex. W82, P45]. On June 4, 2019, the Peeples filed motions to reopen the Walkers' bankruptcy cases for purposes of seeking annulment of the automatic stay. [Case No. 10-43491, Doc. 66; Case No. 10-43492, Doc. 54]. On August 16, 2019, the Walkers and the LLC Defendants each amended their answers in the 2018 Action to remove the bankruptcy discharge as a defense and to add the defense of res judicata. [Ex. W83, W84, P46, P47].

The Peeples filed the Relief Motion on June 18, 2020, and the Walkers filed the Sanctions Motion on March 31, 2021. In the Relief Motion, the Walkers argue, among other things, that the Judgment is not void to the extent it only affects non-debtors and non-estate property—meaning Simplicity and New Spirit and their assets. In response to the Relief Motion, the Walkers argue that New Spirit and Simplicity were not parties to the 2003 Action and were not ordered to do anything by the Judgment and that the 2003 Action solely raised in personam claims against the Walkers.

### III. Conclusions of Law

Both the Relief Motion and the Damages Motion require the Court to determine the extent to which entry of the Judgment violated the automatic stay in the Walkers' bankruptcy cases. If the stay was violated, the Peeples ask the Court to annul the stay.

---

[9] The Court notes that Judge Morris, who presided over the 2003 Action, is also the judge in the 2018 Action, and is therefore familiar with the parties, the issues, and the Judgment. [Ex. W81 at 5-6, 12].

14

The automatic stay arises upon the filing of the bankruptcy case and, among other things, prohibits

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; or
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title[.]

11 U.S.C. § 362(a)(1), (2).

"[A]cts taken in violation of the automatic stay are generally deemed void and without effect." *In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir. 1984). "[A] judicial 'proceeding' within the meaning of section 362(a) ends once a decision on the merits has been rendered; ministerial acts or automatic occurrences that entail no deliberation, discretion, or judicial involvement … do not constitute continuations of such a proceeding." *Roberts v. Comm'r*, 175 F.3d 889, 897 (11th Cir. 1999). Under Georgia law, "no judgment shall be effective for any purpose until the entry of the same[.]" O.C.G.A. § 9-11-58. Therefore, in Georgia superior courts, entry of a judgment is not a mere ministerial act; rather, it is the entry that gives the judgment legal effect such that it constitutes the continuation of a legal proceeding. *See Miller v. Lomax*, 333 Ga. App. 402, 405, 773 S.E.2d 475, 478 (2015). As a result, a judgment entered in violation of the automatic stay is void.

If an individual is injured by a willful violation of the automatic stay, that person "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." *Id.* § 362(k)(1). A violation of the stay is willful "if the violator (1) knew of the automatic stay and (2) intentionally committed the violative act,

15

regardless whether the violator specifically intended to violate the stay." *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1555 (11th Cir. 1996). Failure or refusal to undue an innocent or technical violation of the stay may make the violation willful. *In re Collum*, 604 B.R. 61, 67 (Bankr. M.D. Ala. 2019); *In Matter of Allied Holdings, Inc.*, 355 B.R. 372, 379 (Bankr. N.D. Ga. 2006) (Mullins, J.) ("once the Debtors notified [the plaintiffs and their counsel] of the existence of the automatic stay and of the fact that the default judgment was void, [the plaintiffs and their counsel] violated the automatic stay by refusing to vacate the judgment").

In "appropriately *limited* circumstances," the court may retroactively annual the automatic stay, which validates actions that would otherwise be void for violating the stay. *Albany Partners*, 749 F.2d at 675 (emphasis in original); 11 U.S.C. § 362(d). Courts have taken two similar approaches to deciding whether to annul the stay.

> Some courts have held that a movant must demonstrate extreme or exceptional circumstances to warrant the extraordinary relief of retroactive annulment of the stay. *In re Soares*, 107 F.3d 969 (1st Cir. 1997). In *Soares*, the court observed that "retroactive relief should be the long-odds exception, not the general rule.... [O]nly a strict standard will ensure the accomplishment of these objectives." *Soares*, 107 F.3d at 977. Observing that each bankruptcy case is unique and that it is, therefore, difficult to craft a uniform standard, the court noted that certain instances, such as where a creditor violates the stay without knowledge of the pending bankruptcy, or where the debtor has acted in bad faith, are possible grounds for retroactive relief. Nevertheless, the *Soares* court observed that these examples "illustrate that a rarely dispensed remedy like retroactive relief from the automatic stay must rest on a set of facts that is both unusual and unusually compelling." *Id.*
>
> Other courts have applied a "balancing of the equities" test to determine whether such relief is appropriate. *In re Myers*, 491 F.3d 120 (3d Cir. 2007); *In re National Environmental Waste Corp.*, 129 F.3d 1052 (9th Cir.1997). These courts also recognize that the creditor's awareness of the bankruptcy filing or the debtor's unreasonable or inequitable conduct are considerations for annulling the stay. *National Environmental Waste*, 129 F.3d at 1055. They do not, however, consider the factors "dispositive" and instead

16

> "balance[] the equities in order to determine whether retroactive annulment is justified." *Id.* Other relevant considerations include whether there is equity in the property; whether the property is necessary for an effective reorganization; whether the court would have granted relief from the stay if a motion for relief had been timely filed prior to the stay violation; whether failure to grant retroactive relief will cause unnecessary expense to the creditor; or whether the creditor has detrimentally changed its position on the basis of its action. *In re Anderson*, 341 B.R. 365, 369–370 (Bankr. D.D.C. 2006) (citations omitted).
>
> A closer examination of both tests reveals that they are, in fact, very similar. Both recognize that each case is "sui generis" and must be judged on the facts. *Soares*, 107 F.3d at 977. Moreover, both the "exceptional circumstances" and "balancing of the equities" tests focus, to a large degree, on two considerations: whether a creditor had notice of the pending bankruptcy (i.e., was the creditor's conduct innocent or did it knowingly violate the stay) and whether the debtor has engaged in inequitable conduct.

*In re Howard*, 391 B.R. 511, 518 (Bankr. N.D. Ga. 2008) (Bonapfel, J.); *see also In re Chintella*, No. 13-73481, 2014 WL 3672882, at *9 (Bankr. N.D. Ga. June 20, 2014) (Ellis-Monro, J.).

Here, the Peeples had knowledge of the bankruptcy filings because a plea of bankruptcy was filed in the 2003 Action on the Petition Date. The Walker's attorney sent a letter to Judge Morris about the bankruptcy and the effect of the automatic stay, which counsel for the Peeples also received. The Judgment was entered after the bankruptcy filings and expressly referenced the bankruptcy cases. Therefore, to the extent the Judgment affects the Walkers or property that was then property of their bankruptcy estates, it is void.

There has been much argument about whether the Judgment was solely in personam against the Walkers or whether it was also against New Spirit and Simplicity, and the fact that neither the companies nor the intellectual property rights referenced in the Verdict and Judgment were property of the bankruptcy estate. Because none of New Spirit, Simplicity, and the Technology were property of the bankruptcy estate, the Court may be able to find that with the

17

exception of the award of damages, the Judgment did not violate the automatic stay. But the Court does not need to decide that, nor does it need to determine the nature of the Judgment. The nature of the relief granted in the Judgment is already before the Superior Court, and it is best positioned to interpret its own orders.[10] Furthermore, because the Court finds that annulment of the stay is appropriate to the extent the stay applied to entry of the Judgment, these questions are moot.

The facts here present the type of limited circumstances that warrant annulment of the stay, regardless of whether the Court applies an "exceptional circumstances" test or a "balancing of the equities" test. Paul Walker, Bryan Peeples, and Ms. Sharp all testified credibly about their knowledge and understanding of the implications of the bankruptcy filings on the 2003 Action. None of them understood the entry of the Judgment to violate the automatic stay.[11] Furthermore, the Superior Court, the Walkers' bankruptcy counsel, and this Court all failed to recognize the violation. The Walkers and the Peeples both acted in reliance on the validity of the Judgment, and Paul Walker benefited from that reliance via the dismissal with prejudice of the adversary proceeding and discharge of in excess of $248,000. Paul Walker was not prejudiced by having to defend the adversary proceeding, because the claims in that proceeding could have been brought even without entry of the Judgment. And because Paul Walker acted pro se in the adversary proceeding, he did not incur any attorney fees. The Walkers are not prejudiced by the delay in seeking annulment because the Court is satisfied that both the Peeples and the Walkers

---

[10] At the hearing on the motions for summary judgment in the adversary proceeding, the Court noted that New Spirit and Simplicity were "ordered to do things in the judgment." [Ex. W58 at 35].

[11] The Walkers' counsel has argued that Ms. Sharp's legal research was inadequate and that the cases she relied on to determine entry of the Judgment did not violate the stay were distinguishable. *See Frazier v. State of Georgia (In re Frazier)*, No 02-41136, AP 02-4133, 2003 Bankr. LEXIS 1458, at *19-20 (Bankr. S.D. Ga. June 11, 2003) (in finding that suspension of a driver's license that was completed more than two years prepetition did not violate the stay, the court cited cases stating that entry of a judgment can be ministerial); *McGill v. Laudermill (In re Laudermill)*, No. 05-23377, AP 06-3001, 2007 Bankr. LEXIS 2161, at *8 (Bankr. N.D. Ga. May 11, 2007) (Brizendine, J.) (where state court judgment was signed prepetition and entered postpetition, the court was satisfied that its entry was ministerial). This argument does not change the Court's assessment of Ms. Sharp's credibility with respect to her belief that entry of the Judgment did not violate the stay.

18

were unaware of any issues with the Judgment and the Peeples promptly took steps to address any potential stay violation caused by the Judgment when the matter first came to their attention in 2018.

Furthermore, the facts as they existed on the Petition Date would have provided cause for this Court to modify the automatic stay to allow for entry of the Judgment. The 2003 Action had already been tried to a Verdict, and no bankruptcy purpose would be served by staying the entry of the Judgment or otherwise impeding the verdict of a jury on matters of state law. Allowing the stay to remain in place in face of a request for relief would have gone against all considerations of judicial economy, comity, and prejudice to the parties. Additionally, annulling the stay to the extent it applied returns the non-debtor litigants in the 2018 Action to the status quo thereby allowing the Superior Court to address the in personam or in rem nature of the Judgment. The Court concludes that the Superior Court is in the best position to make this determination and to address any procedural defects in the 2003 Action and Judgment.

Having determined that that the automatic stay should be annulled to the extent it applied to the Judgment, there is no basis for awarding sanctions for violation of the stay. Accordingly, it is

ORDERED that the Relief Motion is GRANTED, and the automatic stay is retroactively annulled with respect to entry of the Judgment; it is further

ORDERED that the Sanctions Motion is DENIED as moot.

**END OF ORDER**

## **Distribution List**

James C. Cifelli
Sharon K. Kacmarcik
Gregory D. Ellis
Lamberth, Cifelli, Ellis & Nason, P.A.
Suite 435
6000 Lake Forrest Drive, N.W.
Atlanta, GA 30328

James M. Sherman
Stanley, Esrey & Buckley, LLP
Suite 2400
1230 Peachtree Street N.E.,
Atlanta, GA 30309

Charles Paul Walker
PO Box 3603
Dalton, GA 30719

Paul Bryan Walker
2201 Vinewood Drive
Dalton, GA 30720

Robin Rouillier Walker
2201 Vinewood Drive
Dalton, GA 30720

Tracey L. Montz
Suite 108-#406
2146 Roswell Road
Marietta, GA 30062-3813